IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CHAVEZ,<br><br>Petitioner,<br><br>vs.<br><br>MICHAEL MARTEL, Warden (A), Mule Creek State Prison,<br><br>Respondent. | No. 2:08-cv-00512-JWS<br><br>MEMORANDUM DECISION |

Petitioner Jose Chavez, a state prisoner appearing *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254.  Chavez is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Mule Creek State Prison. Respondent has answered, and Chavez has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

After entering a guilty plea in 1991, Chavez was convicted in the Los Angeles County Superior Court of one count of second-degree murder, two counts of attempted murder, and one count of shooting at an occupied vehicle.  The Los Angeles County Superior Court sentenced Chavez to an indeterminate prison term of 15 years to life.  Chavez does not challenge his conviction and sentence in these proceedings.

In 2006 Chavez appeared at a parole suitability hearing before the Board of Parole Hearings, which denied him parole.  Chavez timely file a petition for habeas corpus relief in the Los Angeles Superior Court, which denied his petition in an unreported, reasoned decision.

Chavez's subsequent petition to the California Court of Appeal, Second Appellate District, was summarily denied without opinion or citation to authority.  On January 23, 2008, the California Supreme Court summarily denied review without opinion or citation to authority.  Chavez timely filed his petition in this court on March 2, 2008.

On January 9, 2009, this court stayed further action in this case pending the issuance of the mandate by the en banc panel of United States Court of Appeals for the Ninth Circuit in *Hayward*.[1]  The Court of Appeals has rendered its decision in *Hayward*.[2]  The court now terminates its stay and decides the case.

As summarized by the Los Angeles County Superior Court, the facts underlying the commitment offense are:

> The record reflects that on March 24, 1991, [Chavez] and two codefendants, Richard Diaz and Ambrocio Lopez were involved in a gang related shooting.  [Chavez] and codefendants were driving around in Lopez's van looking for rival gang members to kill in retaliation for the previous murder of one of their own gang members.  The three victims, rival gang members, were sitting in a vehicle when they were approached on foot by petitioner and codefendants. After exchanging words, codefendant Diaz pulled out a 357 magnum and fired several shots at the victims.  One victim died at the scene, another suffered a gunshot wound in the torso, and the third escaped injuries during the assault.[3]

## II  ISSUES RAISED/DEFENSES

Chavez raises two grounds:  that the decision of the Board was (1) arbitrary; and (2) was contrary to and an unreasonable application of established federal law.  Respondent does not assert any affirmative defense.

---

[1] *Hayward v. Marshall*, 512 F.3d 536, *rehr'g en banc granted*, 527 F.3d 797 (9th Cir. 2008).

[2] *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc).

[3] Docket 7-3, p. 2.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8]  The Supreme Court has made clear

---

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[9]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a federal habeas proceeding, the standard under which this court must assess the prejudicial impact of constitutional error in a state court criminal proceeding is whether the error had a substantial and injurious effect or influence in determining the outcome.[11]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, Chavez has the burden of showing by a preponderance of the evidence that he merits habeas relief.[12]

In applying this standard, this court reviews the last reasoned decision by the state court.[13]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[14]  This presumption applies to state trial courts and appellate courts alike.[15]

---

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[14] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[15] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

## IV.  DISCUSSION

In his first ground, Chavez argues that the denial of parole denied due process in that it was arbitrary because the findings were unsupported by the evidence, contrary to the evidence in the record, based upon factors inherent in all second-degree murder convictions, and the evidence relied on was irrelevant to parole determinations under the regulations.  In his second ground, Chavez argues that, because the decision of the Los Angeles Superior Court relied solely upon a state court decision and did not discuss his federal constitutional grounds, it was contrary to or an unreasonable application of federal law.  To the extent that Chavez includes in his second ground that the decision of the Board was based upon the static offense and pre-offense factors, otherwise unsupported by reliable evidence, or contrary to the evidence, those arguments are more appropriately part of the first ground, and the court addresses them in that context.

Respondent contends that Chavez does not have a sufficient liberty interest in parole to support federal habeas corpus relief[16] and, in any event, his due process rights were satisfied.[17] These two contentions and Chavez's second ground are foreclosed by the en banc decision in *Hayward*.  *Hayward* made clear that there is no federal "some evidence" rule,[18] thereby foreclosing Chavez's second ground.  *Hayward* has, however, made clear that California law provides the predicate for the "some evidence" rule,[19] thus disposing of Respondents contentions as well.

---

[16] *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).

[17] *See id.* at 15.

[18] *Hayward*, 603 F.3d at 561.

[19] *Id.* at 561–62.

In rejecting Chavez's petition, the Los Angeles Superior Court held:

The Board found [Chavez] unsuitable for parole after a subsequent parole consideration hearing held on August 24, 2006. [Chavez] was denied parole for 1 year. The Board concluded that [Chavez] was unsuitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if he were to be released from prison. The Board based its decision on several factors, including the commitment offense. In reaching its decision, the Board considered several favorable factors including [Chavez's] successful participation in work, vocational, education, and self-help programs, and a positive psychological evaluation. However, the Board found that these positive factors did not outweigh the factors showing unsuitability.

The Board found that the commitment offense was especially cruel and callous in that multiple victims were involved, the offense was carried out in a dispassionate and calculated manner, and in a manner demonstrating a callous disregard for human suffering. The court finds that there is some evidence in the record to support a finding that the offense was carried out in a dispassionate and calculated manner and that multiple victims were attacked, injured or killed. Cal. Code Regs., tit. 15, § 2402(c)(1)(A) and (c)(1)(B). On the evening of March 24, petitioner and codefendants were congregated at a park when they decided to drive into rival gang territory and actively seek rival gang members in order to avenge the death of one of their own. While driving around, [Chavez] became aware that codefendant Diaz was armed with a weapon. When they came upon the victims, codefendant Diaz indiscriminately fired multiple shots into the occupied vehicle, without regard to the safety of innocent bystanders. As a result, one victim was killed and another was injured. Thus, the fact that the offense involved multiple victims, and was carried out in a dispassionate and calculated manner supports a finding that the offense was committed in an especially heinous, atrocious, or cruel manner, a factor indicating unsuitability for parole. Cal. Code Regs., tit. 15, § 2402(c)(1).

The Board's reliance on [Chavez's] prior record and institutional behavior is also supported by some evidence. Cal. Code Regs., tit. 15, § 2402(c)(2) and (c)(3). The record shows that in 1990 [Chavez's] arrest for assault with a deadly weapon resulted in a misdemeanor conviction for challenging a fight and fighting in public. With respect to institutional behavior, [Chavez] has several 115s, including one for possession of an inmate manufactured weapon, which resulted in a sentence of 16 months to be served at the end of the life term.

The Board also noted the [Chavez's] lack of adequate parole plans for Mexico. Cal. Code Regs., tit. 15, § 2402(d)(8). [Chavez] has an INS hold and will most likely be deported to Mexico upon being paroled. The record shows that, although [Chavez] submitted plans to live with his aunt and uncle in Michoacán, Mexico, [Chavez] has not been in contact with them nor did he submit letters of support from them detailing their offers of assistance.

Accordingly, the petition is denied.[20]

In this case, this Court "need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[21] Consequently, this Court must canvas and apply California law to the facts in the record. Under California law "some evidence" of future dangerousness is a *sine qua non* for denial of parole.[22] As the Ninth Circuit noted:

> As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." (Footnote omitted) There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." (Footnote omitted). The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. (Footnote omitted.) Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety." (Footnote omitted.)[23]

Under California law, a parole release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the *public safety* requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot

---

[20] Docket 7-3, pp. 2–3.

[21] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

[22] *In re Lawrence*, 190 P.3d 535, 549 (Cal. 2008); *In re Shaputis*, 190 P.3d 573, 582 (Cal. 2008).

[23] *Hayward*, 603 F.3d at 562 (omitted footnotes are pinpoint citations to *Lawrence*) (internal alteration in the original).

MEMORANDUM DECISION
*Chavez v. Martel*, 2:08-cv-00512-JWS                    7

be fixed . . . ."[24]  "The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole."[25]  The Board must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.[26]  The Board  "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[27]  "[T]he statutory and regulatory mandate to normally grant parole to life prisoners who have committed murder means that, particularly after these prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness."[28]  Where, however, the record also contains evidence of other factors relevant to showing unsuitability for parole, the aggravating circumstances of the crime reliably may continue to predict current dangerousness even after many years of incarceration.[29]

The California Supreme Court has provided substantial guidance on the factors to be considered in applying these general principles.

Title 15, section 2402 of the California Code of Regulations sets forth the factors to be considered by the Board in carrying out the mandate of the statutes.[FN13]  This regulation is designed to guide the Board's assessment of whether the inmate

---

[24] Cal. Penal Code § 3041(b) (emphasis added); *Lawrence*, 190 P.3d at 546; *see Rosenkrantz*, 59 P.3d at 202-03.

[25] *In re Rosenkrantz*, 59 P.3d 174, 222 (Cal. 2002).

[26] *In re Dannenberg,* 104 P.3d 783, 786-87, 802-803 (Cal. 2005); *see Rosenkrantz.*

[27] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

[28] *Lawrence*, 190 P.3d at 553.

[29] *See Shaputis*, 190 P.3d at 584-85.

poses "an unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. (Regs., § 2402, subd. (a).)[FN14]  The regulation also lists several circumstances relating to unsuitability for parole[FN15]— such as the heinous, atrocious, or cruel nature of the crime, or an unstable social background; and several circumstances relating to *suitability* for parole—such as an inmate's rehabilitative efforts, demonstration of remorse, and the mitigating circumstances of the crime.[FN16]  (Regs., § 2402, subds. (c), (d).)  Finally, the regulation explains that the foregoing circumstances "are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel."  (Regs., § 2402, subds. (c), (d).) [. . . . ]

[FN13.]  Petitioner's parole suitability is governed by Title 15, section 2402, which we addressed in *Rosenkrantz, supra,* 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174—a discussion excerpted in substantial part below.  In the companion case of *Lawrence, supra,* 44 Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535, the inmate's parole suitability is governed by Title 15, section 2281, which provides parole consideration criteria and guidelines for murders committed prior to November 8, 1978.  The two sections are identical.

[FN14.]  These factors include "the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." (Regs., § 2402, subd. (b).)

[FN15.]  Unsuitability factors are: (1) a commitment offense carried out in an "especially heinous, atrocious or cruel manner"; (2) a "[p]revious [r]ecord of [v]iolence"; (3) "a history of unstable or tumultuous relationships with others"; (4) "[s]adistic [s]exual [o]ffenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6) "[t]he prisoner has engaged in serious misconduct in prison or jail." (Regs., § 2402, subd. (c)(1)-(6).)  This subdivision further provides that "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." (Regs., § 2402, subd. (c).)

Factors supporting a finding that the inmate committed the offense in an especially heinous, atrocious, or cruel manner include the following: (A) multiple victims were attacked, injured, or killed in the same or

separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense.  (Regs., § 2402, subd. (c)(1).)

[FN16.]  Suitability factors are: (1) the absence of a juvenile record; (2) "reasonably stable relationships with others"; (3) signs of remorse; (4) a crime committed "as the result of significant stress in [the prisoner's] life"; (5) battered woman syndrome; (6) the lack of "any significant history of violent crime"; (7) "[t]he prisoner's present age reduces the probability of recidivism"; (8) "[t]he prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release"; and (9) the inmate's "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." (Regs., § 2402, subd. (d)(1)-(9).)

   "[T]he governing statute provides that the Board *must* grant parole *unless* it determines that *public safety* requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction. (Pen.Code, § 3041, subd. (b).)  And as set forth in the governing regulations, the Board must set a parole date for a prisoner unless it finds, in the exercise of its judgment after considering the circumstances enumerated in section 2402 of the regulations, that the prisoner is unsuitable for parole.  Accordingly, parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation." (*Rosenkrantz, supra,* 29 Cal.4th at p. 654, 128 Cal.Rptr.2d 104, 59 P.3d 174, italics added.)

   The Governor is subject to the same standards as those that apply to the Board.  As we stated in *Rosenkrantz, supra,* 29 Cal.4th 616, 128 Cal.Rptr.2d 104, 59 P.3d 174, the Governor's interpretation of a documentary record is entitled to deference.  (*Id.* at p. 677, 128 Cal.Rptr.2d 104, 59 P.3d 174.)  Although "the Governor's decision must be based upon the same factors that restrict the Board in rendering its parole decision" (*Rosenkrantz, supra,* 29 Cal.4th at p. 660, 128 Cal.Rptr.2d 104, 59 P.3d 174), the Governor undertakes an independent, de novo review of the inmate's suitability for parole. (*Ibid.*)  Accordingly, the Governor has discretion to be "more stringent or cautious" in determining whether a defendant poses an unreasonable risk to public safety. (*Id.* at p. 686, 128 Cal.Rptr.2d 104, 59 P.3d 174.)  When a court reviews the record for some evidence supporting the Governor's conclusion that a petitioner currently poses an unreasonable risk to public safety, it will affirm the Governor's interpretation of the evidence so long as that interpretation is reasonable and reflects due

consideration of all relevant statutory factors.  (*Rosenkrantz, supra,* 29 Cal.4th at pp. 656-658, 660-661, 128 Cal.Rptr.2d 104, 59 P.3d 174.)[30]

"[T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [Board]. . . .  It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole.  As long as the [Board's] decision reflects *due consideration of the specified factors* as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision."[31]

This court does not re-weigh the evidence or substitute its discretion for that of the Board.  Under California law, judicial review of a decision denying parole is "extremely deferential."[32]  It is through this doubly deferential lens that this court reviews the decision of the Los Angeles County Superior Court.  Based upon the record before it, applying *Rosenkrantz, Dannenberg, Lawrence,* and *Shaputis*, this court cannot say that the decision of the Los Angeles County Superior Court affirming denial of parole, finding multiple unsuitable factors in addition to the underlying commitment offense, was contrary to, or involved an unreasonable application of California law or was based on an unreasonable determination of the facts in light of the evidence.

## V.  CONCLUSION AND ORDER

Chavez is not entitled to relief on any grounds raised in the petition.  Accordingly,

**IT IS ORDERED** that the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

---

[30] *Shaputis*, 190 P.3d at 582-83 (emphasis in the original).

[31] *Shaputis*, 190 P.3d at 585 (emphasis in the original) (quoting *Rosenkrantz*, 59 P.3d at 218).

[32] *Rosenkrantz*, 59 P.3d at 210.

**IT IS FURTHER ORDERED** that the court declines to issue a Certificate of

Appealability.[33]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[34]

The Clerk of the Court will please enter final judgment accordingly.

Dated:  June14, 2010.

/s/ John W. Sedwick
United States District Judge

---

[33] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks and citations omitted).

[34] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.